IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GAIL DENTLER,                        §
                                     §
         Plaintiff,                  §
                                     §
v.                                   §        CIVIL ACTION NO. H-06-803
                                     §
MONUMENTAL LIFE INSURANCE            §
COMPANY,                             §
                                     §
         Defendant.                  §
                                     §

## MEMORANDUM AND ORDER

Before the Magistrate Judge upon referral from the District Judge is Defendant's Motion to Exclude Certain Testimony of Wayne Snodgrass, M.D., Ph.D. (Document No. 21). Having considered the motion, Plaintiff's response (Document No. 29), Defendant's reply (Document No. 30), Plaintiff's response to Defendant's reply (Document No. 31), the expert opinion to be offered by Dr. Snodgrass, namely that the cause of death of Mr. Marty Dentler was an overdose of Dilaudid (hydromorphone), and the applicable law, the Magistrate Judge concludes that Dr. Snodgrass's expert medical opinion concerning the cause of death of Mr. Dentler is admissible under Fed.R. Evid. 702. Therefore, for the reasons set forth in more detail below, Defendant's Motion to Exclude Certain Testimony of Wayne Snodgrass, M.D., Ph.D. (Document No. 21) is DENIED.

## I. Background

This is an insurance coverage action. Defendant Monumental Life Insurance Company issued an accidental death insurance policy to Mr. Marty Dentler. The policy provides an accidental death benefit of $150,000.00. Plaintiff, Gail Dentler, was the beneficiary of the policy. On August 8, 2003,

Marty Dentler was admitted to Texas Orthopedic Hospital for a surgical procedure on his left wrist. Marty Dentler died on August 9, 2003.  Following the death of her husband, Plaintiff submitted a claim for benefits under the policy alleging that his death was accidental and therefore covered under the policy at issue.  The claim was denied.  Plaintiff then brought suit against Defendant in state court for breach of contract, and violation of provisions of the Texas Insurance Code and the Texas Deceptive Trade Practices Act.  Defendant removed the case to this court on the basis of diversity jurisdiction.   Plaintiff alleges that Mr. Marty Dentler's death was caused by an overdose of hydromorphone.   Plaintiff has designated Wayne R. Snodgrass, M.D., Ph.D, an expert in pharmacology-toxicology, as an expert to testify about the cause of Mr. Marty Dentler's death.

Defendant seeks to exclude the opinion and proposed testimony of Dr. Snodgrass as it relates to his opinion that Mr. Dentler's death was caused by an overdose of hydromorphone, under *Daubert v. Merrell Dow Pharm., Inc.,* 507 U.S. 904, 113 S.Ct. 2786 (1993), as not scientifically reliable. According to Defendant, the theory underlying Dr. Snodgrass' opinion that the level of glucuronide-3, a metabolite of Dilaudid, in the blood drawn from Mr. Dentler at the hospital between 4:30 a.m. and 5:08 a.m. indicating that Mr. Dentler unexpectedly received a sudden large dosage of Dilaudid around midnight, has not been verified by testing. Defendant further argues that Dr. Snodgrass' opinion concerning the half-life of glucoronide should be excluded because it has never been subjected to peer review and publication, has not been accepted by the relevant scientific community, and has been derived by scientific methodology not susceptible to objective, independent verification. Defendant in its Reply to Plaintiff's Response, further argues that Dr. Snodgrass'

opinion has been developed for litigation[1]  and is supported only by the ipse dixit of Dr. Snodgrass, and relies of an unjustified extrapolation from one substance to another.  Plaintiff in response, argues that Dr. Snodgrass' opinion should not be excluded as it is based on published formulas and known data as amplified in Dr. Snodgrass' affidavit attached to Plaintiff's Response to Defendant's motion, and in his original expert report.

## II.  Discussion

The admissibility of expert testimony is governed by Fed.R.Evid. 702, which states: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form on an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 and the principles announced in *Daubert* apply to technical or specialized expert testimony. *See Kumho Tire Co. v. Carmichael*,  526 U.S. 137, 119 S.Ct. 1167, 1171 (1999); *Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999).

The district court has a "gate-keeping" role when determining the admissibility of expert testimony.  *See Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 371 (5th Cir. 2000).  The court must determine whether an expert is qualified, and whether his testimony is reliable and relevant.  The purpose is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes

---

[1] This is the third lawsuit related to the death of Mr. Marty Dentler that Plaintiff has brought. The first was a medical negligence suit against Texas Orthopedic Hospital in state court.  The second was a product liabilities suit against Baxter Healthcare in federal court.  Dr. Snodgrass has been retained as in expert witness by Plaintiff in both actions, and in his capacity as an expert witness has prepared expert reports and has been deposed.

the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176. The *Daubert* inquiry is always fact-specific. *See Food Lion*, 171 F.3d at 311.

Whether an expert is qualified depends on if the witness has "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F. 3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)), *cert. denied*, 546 U.S. 1089, 126 S.Ct. 1022 (2006); *see also Taylor Pipeline Const. Inc. v. Directional Road Boring, Inc.*, 438 F.Supp. 2d 696, 705 (E.D. Tex. 2006). Whether an expert's testimony is reliable requires "an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1998). "The proponent need not prove to the judge that the expert's testimony is correct, but [he] must prove by a preponderance of the evidence that the testimony is reliable." *Id.*; *see also Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) ("Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does *not* judge the expert's conclusions themselves.")(emphasis in original).

Five non-exclusive factors are generally used to aid the Court in determining whether an expert's methodology is reliable:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore*, 151 F.3d at 275 (citing *Daubert*, 507 U.S. at 593-95, 113 S.Ct. at 2796-97). Not all of the factors will necessarily apply to every expert's testimony. *See Watkins v. Telsmith, Inc.*, 121 F.3d

4

984, 990-91 (5th Cir. 1997).  The court should first decide whether the factors mentioned in *Daubert*

apply, and then consider whether other factors not mentioned in *Daubert* are relevant to the case.

*See Food Lion*, 171 F.3d at 311-12).  When expert medical evidence is proffered, the court assesses

whether the medical expert's reasoning or methodology is scientifically valid and whether it applies

to the facts in issue.  *Food Lion,* 171 F.3d at 310 (citing *Moore v. Ashland Chemical*, Inc., 151 F.3d

269, 275(5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999)). The Fifth Circuit in *O'Neill*

*v. Seariver Maritime*, 2007 WL 2491011 * 2 (5th Cir. Aug. 30, 2007) (No. 07-40029) recently

clarified its holding in *Food Lion* concerning causation:

> In *Food Lion, Inc.*, we reversed the trial court's admission of an expert, because he
> engaged in post-hoc reasoning when establishing a cause of injury without eliminating
> other possibilities.  *Id.* at 314.  *Food Lion* did not invalidate the use of symptoms or
> evidence of an effect to prove cause; instead, *Food Lion* approved the exclusion of
> an expert who establish cause from effect without identifying a scientific basis for his
> determination.  *See Id.* ("The underlying predicates of any cause-and-effect medical
> testimony are that medical science understands the physiological process by which a
> particular disease or syndrome develops and knows what factors cause the process
> to occur.  Based on such predicate knowledge, it may then be possible to fasten legal
> liability for a person's disease or injury.").

The court is further mindful that "the rejection of expert testimony is the exception rather than

the rule."  *See* Fed.R.Evid. 702 advisory committed's notes (2000).  "[V]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence." *Daubert*, 507 U.S. at 596, 113

S.Ct. at 2798).

Here, the record shows that Dr. Snodgrass has significant training and clinical expertise as a

physician, a Medical Toxicologist, and a Clinical Pharmacologist.  He is a professor at the University

of Texas Medical Branch in Galveston, and medical director of the Texas Poison Control Center.  He

has published in peer review journals.  The record further reflects that Dr. Snodgrass reviewed the medical records, pharmacy records, depositions, manufacturing information, and published peer-reviewed medical and scientific studies in connection with preparing his Medical Toxicology Report. There is sufficient scientific support for Dr. Snodgrass' opinion to render it reliable under *Daubert*. Dr. Snodgrass is well-qualified, and his report contains his methodology as it relates to measuring hydromorphone levels, and the basis for his opinion, all of which appear to be reliable at this time. To the extent that Defendant challenges Dr. Snodgrass' calculations, and the scientific references he relied upon in formulating his calculations, such objections are more appropriate for cross-examination.  In sum, upon this record, Dr. Snodgrass' opinion that the cause of death of Mr. Marty Dentler was an overdose of Dilaudid  is scientifically reliable within the meaning of *Daubert* and Fed.R.Civ.P. 702(b).

## III.  Conclusion and Order

Based on the foregoing, and the conclusion that the expert medical opinion of Dr. Wayne Snodgrass concerning the cause of death of Mr. Marty Dentler is scientifically reliable under Fed.R.Civ.P. 702, *Daubert*, and its progeny, it is

ORDERED that Defendant's Motion to Exclude Certain Testimony of Wayne Snodgrass, M.D., Ph.D. (Document No. 21) is DENIED.

Signed at Houston, Texas, this 28th  day of  November, 2007.

*Frances H. Stacy*

Frances H. Stacy
United States Magistrate Judge